**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 15 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

DORSIE LESLIE JONES, JR.,

      Petitioner-Appellant,

v.

GARY GIBSON, Warden, Oklahoma
State Penitentiary; ATTORNEY
GENERAL OF THE STATE OF
OKLAHOMA,

      Respondents-Appellees.

No. 98-6370

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-85-2789-T)**

---

Vicki Ruth Adams Werneke, Assistant Federal Public Defender, Death Penalty
Federal Habeas Corpus Division, Oklahoma City, Oklahoma, for
Petitioner-Appellant.

Sandra D. Howard, Assistant Attorney General, Chief, Criminal Appeals (W.A.
Drew Edmondson, Attorney General of Oklahoma, with her on the brief),
Oklahoma City, Oklahoma, for Respondents-Appellees.

---

Before **TACHA** , **BALDOCK** , and **EBEL** , Circuit Judges.

---

**TACHA** , Circuit Judge.

A jury found petitioner guilty of first degree murder and two counts of assault and battery with a dangerous weapon and sentenced him to death for the murder conviction and to twenty and fifteen years' imprisonment for the other two convictions. The Oklahoma Court of Criminal Appeals affirmed the convictions and sentences. *See Jones v. State*, 648 P.2d 1251 (Okla. Crim. App. 1982), *cert. denied*, 459 U.S. 1155 (1983). That court also affirmed the state trial court's denial of petitioner's first application for post-conviction relief. *See Jones v. State*, 704 P.2d 1138 (Okla. Crim. App. 1985).

On November 18, 1985, petitioner filed a petition for writ of habeas corpus in federal district court. After directing petitioner to exhaust state court remedies on various claims, the district court administratively closed the case without prejudice to reopening. Petitioner filed a second state application for post-conviction relief. The state trial court denied relief, and the Oklahoma Court of Criminal Appeals affirmed, *see Jones v. State*, No. PC-91-0756 (Okla. Crim. App. Mar. 28, 1995) (unpublished order). Thereafter, petitioner filed a revised federal habeas petition, and the district court reopened the case. The court denied habeas relief and granted a certificate of probable cause.

On appeal, petitioner asserts the following grounds for relief: (1) there is insufficient evidence in the record to support the unconstitutionally applied

heinous, atrocious, or cruel aggravating circumstance; (2) his right to remain silent and his right to confrontation were violated; (3) the prosecutor improperly questioned him, leading the jury to believe he would be released if found not guilty by reason of insanity; and (4) his appellate counsel provided ineffective assistance. We affirm.

## STANDARD OF REVIEW

Because petitioner filed his initial federal habeas petition long before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), AEDPA does not apply to this appeal. *See Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under pre-AEDPA law, this court affords a presumption of correctness to state court factual determinations. *See Williamson v. Ward*, 110 F.3d 1508, 1513 & n.7 (10th Cir. 1997); *see also Demosthenes v. Baal*, 495 U.S. 731, 735 (1990) (per curiam) (holding federal courts may overturn state court factual determinations only upon concluding they are not fairly supported by record). This court reviews the district court's conclusions of law de novo and its factual findings for clear error. *See Foster v. Ward*, 182 F.3d 1177, 1183 (10th Cir. 1999). "When the district court's findings are based merely on a review of the state record, we do not give them the benefit of the clearly erroneous standard but instead conduct an independent review." *Smallwood v. Gibson*, 191 F.3d 1257, 1264 n.1 (10th Cir. 1999). "We may grant relief to a state prisoner only if

state court error deprived him of fundamental rights guaranteed by the constitution of the United States." *Brown v. Shanks*, 185 F.3d 1122, 1124 (10th Cir. 1999) (quotations omitted).

## FACTS

On August 14, 1979, petitioner was drinking beer with Betty Strain at the Wichita Lounge in Lawton, Oklahoma. Royce Linker, who worked at the bar, noticed a gun protruding from the top of petitioner's boot. She asked him to cover the gun with his pant leg. Petitioner told her to shut up or he would blow her head off. *See* Tr. vol. 2 at 402. He also stated that he came to kill everyone in the bar, and she would be first. *See id.* at 428, 432-33, 498. Immediately thereafter, petitioner pointed the gun at Ms. Linker, who ducked and crawled behind the bar to hide. Petitioner fired the gun, and the bullet hit Ms. Strain, who fled from the bar. *See id.* at 404.

Petitioner then turned to Stanley Buck, Sr. and his son Stanley Buck, Jr. and asked them what they were doing. *See id.* at 500. They indicated that they were shooting pool. Petitioner shot both of them. [1] *See id.* at 440, 502-03.

---

[1] There is inconsistency between the testimony of Mr. Buck, Jr. and Ms. Linker regarding who was shot first. Like the federal district court, we assume Mr. Buck, Sr. was shot first.

-4-

Petitioner asked Mr. Buck, Sr., after the first shot, if he was dead and then shot him again. He died as a result of the gunshot wounds.

Petitioner testified at trial that on the day of the murder he had probably taken the prescription drug Ativan and had drunk two shots of whiskey and one beer. His defense was that the interaction of the drug and alcohol rendered him unconscious of his acts and therefore temporarily insane. He testified that he did not know if he had done the things about which the other witnesses had testified. *See id.* at 647.

The jury rejected petitioner's insanity defense and found him guilty of murder. At the sentencing stage, the jury found two aggravating circumstances: the murder was especially heinous, atrocious, or cruel and petitioner knowingly created a great risk of death to more than one person.

## DISCUSSION

## I. HEINOUS, ATROCIOUS, OR CRUEL AGGRAVATOR

Petitioner argues there is insufficient evidence to support the unconstitutionally applied heinous, atrocious, or cruel aggravating circumstance. The trial court instructed the jury as follows:

> You are further instructed that the term "heinous", as that term is used in these instructions means extremely wicked or shockingly evil, and that "atrocious" means outrageously wicked and vile; and "cruel" means designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the suffering of others; pitiless.

-5-

O.R. at 173. After petitioner's conviction, the Supreme Court held that this instruction was unconstitutional as applied. *See Maynard v. Cartwright*, 486 U.S. 356, 360 (1988); *see also Cartwright v. Maynard*, 822 F.2d 1477, 1485-91 (10th Cir. 1987). Subsequently, the Oklahoma Court of Criminal Appeals narrowed the aggravator, holding that it only applies to those murders which are preceded by torture or serious physical abuse. *See Stouffer v. State*, 742 P.2d 562, 563 (Okla. Crim. App. 1987); *see also Phillips v. State*, 989 P.2d 1017, 1039 (Okla. Crim. App. 1999). This narrowed construction is constitutionally permissible. *See Duvall v. Reynolds*, 139 F.3d 768, 792-93 (10th Cir.), *cert. denied*, 119 S. Ct. 345 (1998).

The Oklahoma Court of Criminal Appeals, in reviewing the denial of petitioner's second post-conviction application, properly applied this narrowed construction. *See Walton v. Arizona*, 497 U.S. 639, 653-54 (1990) (holding state appellate court may properly determine whether evidence supports a properly limited aggravator); *see also Richmond v. Lewis*, 506 U.S. 40, 47 (1992) (stating state appellate court can rely on adequate narrowing construction in curing error caused by unconstitutionally vague aggravating factor); *Davis v. Executive Dir. of Dep't of Corrections*, 100 F.3d 750, 767, 772 (10th Cir. 1996) (determining state court may properly cure error by correctly applying narrowed construction). Reweighing the evidence under the narrowed construction, the Oklahoma

appellate court determined the murder was especially heinous, atrocious, or cruel. The court stated petitioner "was wholly indifferent to the pain inflicted upon the victim" and "'[t]he unarmed victim lay wounded and pleaded for his life, yet the [petitioner] coldly and deliberately shot him at point blank range and then continued to mock the victim as he bled to death.'" *Jones*, No. PC-91-0756, slip op. at 4 (quoting *Jones*, 648 P.2d at 1259). The court concluded the deceased was tortured and knew death was "eminent." *Id.* On habeas, the federal district court concluded there was sufficient evidence in the record to support finding this aggravator under a narrowed construction of the instruction, even though no evidence in the record supported the Oklahoma Court of Criminal Appeals' finding the victim pleaded for his life.

Petitioner argues the evidence does not support the Oklahoma Court of Criminal Appeals' determination that the murder was especially heinous, atrocious, or cruel, because no evidence supports that court's finding "[t]he unarmed victim lay wounded and pleaded for his life." *Id.* On federal habeas review of the state appellate court's determinations, this court reviews the state court's application of the narrowed construction under the "rational factfinder" standard of *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Davis*, 100 F.3d at 767-68 (citing *Richmond*, 506 U.S. at 47); *see also Lewis v. Jeffers*, 497 U.S. 764,

783 (1990). [2] We will uphold the state appellate court's determination "so long as a rational factfinder could have found the elements identified by the construction–here that the crime involved torture or physical abuse." *Hatch v. Oklahoma* , 58 F.3d 1447, 1469 (10th Cir. 1995). A challenge to the sufficiency of the evidence under *Jackson* presents a question of law. *See Moore v. Gibson* , 195 F.3d 1152, 1176 (10th Cir. 1999).

Under Oklahoma law, the torture or serious physical abuse required by the properly narrowed aggravator may include infliction of great physical anguish or

[2] Before arguing insufficiency of the evidence, petitioner complains the Oklahoma Court of Criminal Appeals did not conduct a proper reweighing because it neither reweighed the valid aggravating circumstances against the mitigating evidence nor determined if the effect of the invalid aggravator was harmless beyond a reasonable doubt as required by *Clemons v. Mississippi* , 494 U.S. 738 (1990). Instead, according to petitioner, the court reweighed using a sufficiency of the evidence test, a test not approved by any court. Petitioner also maintains the federal district court made these same mistakes. As respondents properly point out, *Clemons* provides for reweighing of the remaining valid aggravators and mitigators or harmless error analysis when an aggravator has been invalidated or improperly defined, and, thus, eliminated from consideration. *See id.* at 741, 745. Here, the Oklahoma Court of Criminal Appeals recognized the heinous, atrocious, or cruel aggravator was improperly defined, and cured the error by properly narrowing the aggravator and determining whether the evidence supported a finding of that aggravator as properly narrowed. *See Richmond* , 506 U.S. at 47. Thus, on federal habeas corpus review, the issue is whether the Oklahoma Court of Criminal Appeals correctly determined a "rational factfinder" could find sufficient evidence to support the constitutionally narrowed aggravator. *See id.* (quotation omitted); *Walton* , 497 U.S. at 653-54. If the evidence supports the properly narrowed aggravator, *Clemons* reweighing or harmless error analysis would serve no function and thus is not needed.

extreme mental cruelty. *See Phillips*, 989 P.2d at 1039; *Cheney v. State*, 909 P.2d 74, 80 (Okla. Crim. App. 1995). Conscious physical suffering of the victim must occur before death and any extreme mental distress must result from the petitioner's intentional acts. *See Cheney*, 909 P.2d at 80.

Any mental torture must produce mental anguish in addition to that which necessarily accompanies the underlying killing. *See id.* The analysis focuses on the acts of the petitioner and the level of tension created. *See Martinez v. State*, 984 P.2d 813, 830 (Okla. Crim. App. 1999); *Cheney*, 909 P.2d at 80. Oklahoma law, however, is unclear as to the length of time a victim must be terrorized before there is mental torture. *Compare Turrentine v. Oklahoma*, 965 P.2d 955, 976 (Okla. Crim. App. 1998) ("The length of time which the victim suffers mental anguish is irrelevant.") (further quotation omitted), *and Berget v. State*, 824 P.2d 364, 373 (Okla. Crim. App. 1991) (same), *with Washington v. State*, 989 P.2d 960, 975 (Okla. Crim. App. 1999) ("The mental torture element is confined to cases in which the victim is terrorized for a significant period of time before death.") (further quotation omitted), *Turrentine*, 965 P.2d at 976 (same), *and Cheney*, 909 P.2d at 81 (same). There is no mental anguish, however, when death probably occurs instantaneously. *See Booker v. State*, 851 P.2d 544, 548 (Okla. Crim. App. 1993). Evidence that the victim was conscious and aware of the attack supports a finding of torture. *See Le v. State*, 947 P.2d 535, 550 (Okla.

Crim. App. 1997); *see also Hooks v. Ward*, 184 F.3d 1206, 1240 (10th Cir. 1999) (noting Oklahoma law requires murder victim to be conscious during at least part of attack); *Spears v. State*, 900 P.2d 431, 443 (Okla. Crim. App. 1995) ("conscious[ness] . . . is the critical inquiry in determining whether a murder was especially heinous, atrocious or cruel"); *Neill v. State*, 896 P.2d 537, 556 (Okla. Crim. App. 1994) (permitting finding of aggravator when mental torment occurred before shooting).

We agree with both petitioner and the federal district court that the record does not support the Oklahoma Court of Criminal Appeals' finding that petitioner pleaded for his life. Nonetheless, we conclude the evidence is sufficient to support a finding of torture or extreme mental cruelty under the properly narrowed aggravator. Several factors indicate mental cruelty.

First, petitioner threatened to kill everyone in the bar. We can assume Mr. Buck, Sr., heard petitioner's threat. Petitioner raised his voice when making the threat. *See* Tr. vol. 2, at 430. Mr. Buck, Jr., testified to hearing petitioner arguing with Ms. Linker about the gun protruding from the boot. *See id.* at 495, 498. Mr. Buck, Sr. presumably witnessed the shooting of Ms. Strain. *Cf. Neill*, 896 P.2d at 556 (finding extreme mental anguish where victims heard co-workers savagely murdered and realized they could be next). According to Mr. Buck, Jr. his father "looked awful scared" as petitioner put the gun to his father's head and

-10-

neck and pushed him toward the back of the bar. Tr. vol. 2 at 500-03. At this time, Mr. Buck, Sr. probably was anticipating, with some uncertainty, harm or death to both his son and to himself. *See Neill*, 896 P.2d at 556 ("Mental anguish includes the victim's uncertainty as to his ultimate fate."); *cf. Turrentine*, 965 P.2d at 977 (finding evidence insufficient to support mental torture element, but noting, in dicta, "[h]aving her mother killed in front of her, and possibly her brother and then waiting her turn, seems sufficient to warrant a finding of mental torture").

Also, petitioner shot Mr. Buck, Sr. without provocation. *Cf. Phillips*, 989 P.2d at 1040 (considering unprovoked manner of killing as factor in finding aggravator); *Berget*, 824 P.2d at 374 (same). Furthermore, between the first and second bullets, petitioner mocked and taunted Mr. Buck, Sr. As Mr. Buck, Sr. lay on the ground making sounds,[3] petitioner said "[a]ren't you dead? You're dead" and shot Mr. Buck, Sr. again. Tr. vol. 2 at 440; *cf. Phillips*, 989 P.2d at 1040 (considering killer's attitude as evidenced by taunts and verbal threats as factors in finding aggravator).

---

[3] It is possible the Oklahoma Court of Criminal Appeals construed these noises as Mr. Buck, Sr.'s plea for his life. Nonetheless, the evidence does not support this. *See* Tr. vol. 2 at 568 (testimony that after first shot Mr. Buck, Sr. was gasping for breath and "blood and stuff" came out of his mouth); *see also id.* at 617 (testimony of medical examiner that if victim was trying to get air he would have made noises).

We recognize that Mr. Buck, Sr. probably lost consciousness thirty seconds to two minutes after the first gunshot. *See* Tr. vol. 2 at 614-15. In so recognizing, we do not intend to suggest that anything other than instantaneous death constitutes torture sufficient to prove this aggravator. *Cf. McCarty v. State*, 977 P.2d 1116, 1134 (Okla. Crim. App. 1998) (finding death was not instantaneous). This is not a case where the victim was rendered unconscious prior to any physical injury or mental torture. The manner of killing involved cruelty beyond the act of the killing itself due to the threats and taunts and Mr. Buck, Sr.'s reasonable fear of harm to himself and to his son. Thus, we do not need to "engage in pure speculation and guesswork" to conclude Mr. Buck, Sr. experienced conscious mental torture before death. *Perry v. State*, 893 P.2d 521, 535 (Okla. Crim. App. 1995).

Considering the unprovoked killing of Mr. Buck, Sr., the likelihood that he suffered both mental torture before the first shot and between the two shots, petitioner's attitude as evidenced by his taunts and verbal threats, and the pitiless nature of the shootings, we conclude there was sufficient evidence to support the heinous, atrocious, or cruel aggravator.

Petitioner believes the Oklahoma Court of Criminal Appeals did not have the trial records when it performed its review of the properly narrowed aggravator. The federal district court noted that it did not appear that the

-12-

Oklahoma appellate court had reviewed the trial transcript during its reweighing and instead had looked only at the facts recited in the direct appeal opinion. This appears to be correct, upon comparison of the direct appeal opinion, *Jones*, 648 P.2d at 1259, and the second post-conviction opinion, *Jones*, No. PC–91-0756, slip op. at 4. Although it is unclear whether the Oklahoma Court of Criminal Appeals considered the transcript, the court said it reweighed. While it is preferable for the Oklahoma appellate court to reweigh based on a fresh review of the record, we cannot say that constitutional error occurs when a state appellate court reweighs based upon its direct criminal appeal opinion, as that opinion presumably reflected the record before that court on direct criminal appeal.

## II. VIOLATION OF CONSTITUTIONAL RIGHTS

### A. Fifth Amendment Violations

Petitioner argues the prosecutor violated his Fifth Amendment right to silence by (1) cross-examining petitioner about his refusal to discuss the shooting incident during his sanity evaluation and (2) presenting the psychiatrist who examined petitioner to testify regarding his refusal to discuss the incident. Respondents argue, as they did in the district court, that this claim is procedurally barred. We agree.

Petitioner raised this claim in his first post-conviction application, and the Oklahoma Court of Criminal Appeals found it to be procedurally defaulted. *See Jones*, 704 P.2d at 1140. Petitioner again raised this claim in his first federal habeas petition and also intertwined it with an ineffective assistance of appellate counsel claim. The federal district court directed petitioner to exhaust the ineffective assistance claim. Petitioner, however, failed to raise this claim in the second state post-conviction application either alone or specifically as part of his ineffective assistance of appellate counsel claim. In his revised federal habeas petition, petitioner again argued the claim should be heard on its merits because appellate counsel was ineffective. The federal district court considered the claim on the merits for that reason. Respondents, however, urge that this court not consider the merits of the claim because petitioner has failed to assert in state court his ineffective assistance of appellate counsel claim. *See Murray v. Carrier*, 477 U.S. 478, 489 (1986) (deciding claim of ineffective assistance of counsel should be presented to state courts as independent claim before it may be asserted as cause for procedural default).

We conclude the merits of the ineffective assistance of appellate counsel claim are unexhausted because petitioner did not argue ineffective assistance of appellate counsel with respect to this claim in his second post-conviction application. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 1731,

-14-

1732 (1999); *see also Smallwood*, 191 F.3d at 1267 ("Although petitioner raised an ineffective assistance of counsel claim . . ., he based it on different reasons than those expressed in his habeas petition[, and therefore] failed to exhaust his ineffective assistance of counsel claim[].");    *Demarest v. Price*, 130 F.3d 922, 938-39 (10th Cir. 1997) (finding ineffective assistance claim unexhausted when petitioner made general allegations in state court and specific allegations in federal habeas petition).  The state courts, however, would now find this unexhausted claim procedurally barred on independent and adequate state grounds.  *See Smallwood*, 191 F.3d at 1267 (citing   *Coleman v. Thompson*, 501 U.S. 722, 735 n.* (1991)).  This court, therefore, will consider this procedurally defaulted claim only if petitioner can show cause for his default and resulting prejudice or a fundamental miscarriage of justice if the federal courts fail to consider the claim.    *See English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (citing  *Coleman*, 501 U.S. at 749-50).

Petitioner cannot show cause.  He presents no reason for failing to raise this ineffective assistance of appellate counsel claim in his second post-conviction application, despite being directed to do so by the district court, and despite the Oklahoma Court of Criminal Appeals' consideration of other claims of ineffective

assistance of appellate counsel raised for the first time in that application. [4] Also, this court's failure to review this claim will not result in a fundamental miscarriage of justice, because petitioner cannot show actual innocence in light of his admitting the shootings. *See Smallwood*, 191 F.3d at 1269. Accordingly, we conclude this claim is procedurally barred.

## B. Right to Confront State's Witness

Petitioner argues he should have been allowed to cross-examine Ms. Linker about criminal charges pending against her, her mental health history, and her relationship with the decedent in order to show her bias. On the morning of the first day of trial, the trial court granted the State's motion in limine preventing petitioner from questioning Ms. Linker about (1) charges pending against her for DUI, feloniously carrying a firearm after former conviction of a felony, and burglary; (2) her mental health history, other than her mental capacity at the time of the shootings; and (3) a previous sexual relationship with Mr. Buck, Sr. *See* Tr. vol. 1 at 1-9. At that time, counsel objected. He indicated that the pending charges were relevant because they suggested the district attorney had made a

---

[4] Petitioner argues that respondents did not file a cross-appeal and therefore any procedural bar argument has been waived. This court has never required a respondent to file a cross-appeal in order to continue to assert that a claim is procedurally barred. Rather, this court has even held that it may consider procedural bar sua sponte. *See Hatch*, 58 F.3d at 1453.

promise of leniency to Ms. Linker. *See id.* At trial, during cross-examination of Ms. Linker, petitioner's counsel asked her if she had ever carried a firearm and if she had carried one on the night of the murder. She asserted her Fifth Amendment right against self-incrimination to the first question and answered "no" to the second. *See id.* vol. 2 at 468-69. Counsel did not ask Ms. Linker about any pending criminal charges or contest the ruling on the motion in limine regarding these charges. Counsel attempted to ask Ms. Linker about her previous mental history. The State objected, and the trial court reminded counsel about the motion in limine. *See id.* at 470. Although Ms. Linker testified she had dated Mr. Buck, Sr., counsel did not ask her about the nature of her relationship with him. *See id.* at 490.

### 1. Procedural Bar/Waiver

Respondents argue this claim is procedurally barred. Petitioner first raised this claim in his first state post-conviction application. The Oklahoma Court of Criminal Appeals found it to be barred. *See Jones*, 704 P.2d at 1140. Petitioner also raised the claim in his second post-conviction application. The Oklahoma appellate court discussed the merits of the claim under the ineffective assistance of appellate counsel argument, determining (1) the trial court erred in not allowing defense counsel to cross-examine Ms. Linker on the pending charges in order to show her possible bias; (2) counsel failed to preserve the issue during

-17-

cross-examination of Ms. Linker; and (3) any error in not allowing petitioner to impeach Ms. Linker was harmless because her testimony was cumulative to Mr. Buck, Jr.'s testimony. *See Jones*, No. PC-91-0756, slip op. at 6-7.

On federal habeas corpus review, the district court concluded that (1) any error concerning pending charges or Ms. Linker's relationship with Mr. Buck, Sr. was waived, because counsel should have contested the ruling on the motion in limine during cross-examination of Ms. Linker; and (2) any error regarding any of the three areas was harmless because trial counsel effectively and thoroughly cross-examined Ms. Linker and because the excluded material was not relevant to petitioner's defense.

Petitioner did waive any claims with respect to Ms. Linker's pending charges and her relationship with the decedent. Under Oklahoma law, a motion in limine is advisory. *See Cheatham v. State*, 900 P.2d 414, 427 (Okla. Crim. App. 1995). To preserve an issue, a defendant must make an offer of proof during trial or attempt to introduce evidence at trial. *See Mitchell v. State*, 884 P.2d 1186, 1197-98 (Okla. Crim. App. 1994). Petitioner did not make an offer of proof during trial, and his attempt to introduce evidence was limited to only the mental health issue.

Despite the waiver, the Oklahoma Court of Criminal Appeals decided this claim on its merits when it addressed the claim of ineffective assistance of

-18-

appellate counsel raised in the second post-conviction application. Thus, state procedural bar does not preclude federal habeas review. *Cf. Crease v. McKune*, 189 F.3d 1188, 1192 (10th Cir. 1999); *Hooks*, 184 F.3d at 1215 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 801-03 (1991)).

**2. Merits**

The Sixth Amendment right to confrontation includes the right to cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315 (1974). "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316-17; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). Whether the jury would have been influenced by any possible bias of Ms. Linker is pure speculation. Nonetheless, the jury was entitled to have the benefit of a full cross-examination as to her possible bias in order to determine what weight to give her testimony. *See Davis*, 415 U.S. at 317; *Alford v. United States*, 282 U.S. 687, 693 (1931) (holding that where witness was in prosecutor's custody due to pending charges, petitioner was "entitled to show by cross-examination that his testimony was affected by fear or favor"); *see also Davis*, 415 U.S. at 318 n.6 (recognizing *Alford* involved federal criminal trial, but noting constitutional dimension of holding applies to state criminal conviction); *Bui v. DiPaolo*, 170 F.3d 232, 241-42 (1st Cir. 1999) (stating petitioner's entitlement to cross-examine witnesses

-19-

"increases in sensitivity in direct proportion to witness's importance" to state's case), *petition for cert. filed* (U.S. June 14, 1999) (No. 98-9840). Thus, reviewing de novo, *see Hatch*, 58 F.3d at 1467, we conclude the trial court improperly curtailed cross-examination in violation of petitioner's right to confrontation.

Our analysis does not end here. Harmless error analysis applies to Confrontation Clause cases. *See Van Arsdall,* 475 U.S. at 680, 684. When a federal court considers a Confrontation Clause violation in a habeas proceeding, the relevant harmless error analysis is "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error," *id.* at 684, "had substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993) (quotation omitted). This court's harmless error review is de novo. *See Tuttle v. Utah*, 57 F.3d 879, 884 (10th Cir. 1995).

In reviewing for harmless error, this court examines "the entire record to determine the error's possible effect on the jury." *Crespin v. New Mexico*, 144 F.3d 641, 649 (10th Cir.), *cert. denied*, 119 S. Ct. 378 (1998). Whether an error is harmless depends on (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness

-20-

on material points; (4) the extent of the actual cross-examination; and (5) the overall strength of the State's case. *See Van Arsdall*, 475 U.S. at 684.

Ms. Linker was an important witness, *see* Tr. vol. 1 at 6 (both parties agreed that Ms. Linker was one of two main witnesses), whose testimony was not merely cumulative. Her testimony and the testimony of the other main witness, Mr. Buck, Jr., were inconsistent at times. Thus, the first two areas of inquiry suggest the error was not harmless.

The remaining areas of inquiry, however, suggest the error was harmless. Defense counsel carefully cross-examined Ms. Linker regarding the events occurring at the shooting. The jury was able to observe her demeanor and assess her credibility with respect to her description of these events. As the federal district court noted, defense counsel pointed out inconsistencies between petitioner's testimony at the preliminary hearing and her testimony at trial, and inconsistencies between her testimony and the testimony of other witnesses in an attempt to impeach her. *Cf. Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir. 1991) (determining defense counsel thoroughly examined witness and impeached him with prior inconsistent statements). Certainly her credibility could have been scrutinized more closely if the jury had heard testimony that she hoped for a favorable disposition of her pending charges. *See Wright v. Dallman*, 999 F.2d 174, 180 (6th Cir. 1993). Nothing in the record indicates, beyond mere

-21-

speculation, however, that a promise for favorable disposition of pending charges actually had been made. *See* Tr. vol. 1 at 2 (defense counsel's suggestion jury had right to draw conclusions regarding promises State made or intended to make where carrying a firearm after former conviction of a felony had not gone to preliminary hearing in nine months and State had requested two continuances of that preliminary hearing after petitioner's preliminary hearing).

Also, the jury had some impeachment evidence before it. The State presented evidence that Ms. Linker had a previous first degree manslaughter conviction. *See* Tr. vol. 2 at 420; *see also Davis*, 415 U.S. at 316 (determining evidence of prior criminal conviction is general way to discredit witness). Ms. Linker testified that she had dated Mr. Buck, Sr. *See* Tr. vol. 2 at 490.

Finally, the evidence of petitioner's guilt was strong. By contrast, the evidence of his insanity was not. Petitioner's expert witnesses merely testified that it was reasonable to infer petitioner was temporarily insane and not aware of what he was doing at the time of the shootings. Other witnesses testified petitioner was calm and rational. The evidence excluded by the limitation on cross-examination was not material to the presentation of petitioner's defense.

Considering the evidence as a whole, we conclude the error in limiting cross-examination was harmless. It is unlikely the restriction on cross-examination had a substantial effect or influence on the jury's verdicts.

## C.  Cumulative Error

Petitioner argues the federal district court erred in failing to consider the combined effect of the right to confrontation and Fifth Amendment errors after it found the errors to be harmless individually.  Petitioner did not make this argument in his revised habeas petition.  Thus, this court need not consider it. *See Oyler v. Allenbrand*, 23 F.3d 292, 299 n.8 (10th Cir. 1994).  In any event, this argument is without merit because petitioner procedurally defaulted his Fifth Amendment claim and the right to confrontation violation was harmless.

## III.  PROSECUTORIAL MISCONDUCT

Petitioner asserts the prosecutor violated his right to a fair trial by questioning him about the consequences if the jury were to find him not guilty by reason of insanity.  Specifically, the prosecutor asked petitioner if he knew that he would go free if the jury found him temporarily insane.  *See* Tr. vol. 2 at 676-78; *see also id.* vol. 3 at 770-71 (prosecutor's questioning of petitioner's mental health expert witness whether petitioner goes free if witness gives insanity opinion).  Petitioner maintains the prosecutor was trying to insert societal alarm into the jury's deliberations.

Petitioner first raised this claim in his first application for post-conviction relief.  The Oklahoma Court of Criminal Appeals determined petitioner waived the claim because he did not raise it on direct appeal.  Petitioner also raised this

claim in his second application for post-conviction relief. The Oklahoma Court of Criminal Appeals discussed the issue on its merits when considering ineffective assistance of appellate counsel. The court determined any error was harmless, pointing to the overwhelming evidence of guilt and the lack of persuasive evidence concerning the defense of insanity. *See Jones*, No. PC-91-0756, slip op. at 8-9. The federal district court determined the state trial court erred in allowing these questions, but any error did not violate petitioner's constitutional rights.

Allegations of prosecutorial misconduct are mixed questions of law and fact. *See Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994). A prosecutor's improper remark will require reversal of a state conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 645 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Inquiry into the fundamental fairness of a trial can be made only after examining the entire proceedings. *See Donnelly*, 416 U.S. at 643. An improper appeal to societal alarm typically does not amount to a denial of due process. *See Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994).

Under Oklahoma law, if a defendant is found guilty by reason of insanity, he will remain in custody until the court determines that he is not presently

mentally ill or dangerous to the public peace or safety. *See* Okla. Stat. tit. 21, § 152(4); *id.* tit. 22, § 1161. Thus, the prosecutor's questions and comments were improper under state law. Federal habeas relief is not available for state law errors, however; rather, it is limited to violations of federal constitutional rights. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A review of the entire proceedings does not support petitioner's argument that the prosecutor's conduct so infected the trial with unfairness that the resulting convictions and sentences were a denial of due process. In light of the strong evidence of guilt, and the weakness of petitioner's defense, there is not a reasonable probability that the outcome would have been different without the alleged misconduct. *See* *Smallwood*, 191 F.3d at 1276; *cf. United States ex rel. Alerte v. Lane*, 725 F. Supp. 936, 943-44 (N.D. Ill. 1989) (concluding petitioner was denied a fair trial where prosecutor repeatedly exploited fear petitioner would go free if found not guilty by reason of insanity, where petitioner's insanity defense was not based on temporary insanity, where evidence of sanity was not overwhelming, and where judge did not intervene or give curative instructions), *appeal dismissed*, 898 F.2d 69 (7th Cir. 1990). [5]

---

[5] Contrary to petitioner's suggestion, *Munn v. State*, 658 P.2d 482, 488 (Okla. Crim. App. 1983), does not establish constitutional error. The court in *Munn* vacated the death sentence and remanded for modification of the sentence to life imprisonment where (1) improper cross-examination by the prosecutor

(continued...)

## IV. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner argues his appellate counsel was ineffective for failing to raise the Fifth Amendment and right to confrontation claims. Petitioner's ineffective assistance of appellate counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish constitutionally ineffective assistance of counsel, petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *See id.* at 687. "When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue. If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *Hooks*, 184 F.3d at 1221 (quotation and citation omitted).

As discussed above, the ineffective assistance of appellate counsel claim with respect to the Fifth Amendment claim is procedurally barred. Because, also

---

[5](...continued)
inferred that if the defendant was found not guilty by reason of insanity he would be released from commitment *and* (2) the death penalty was disproportionate. The court considered both factors in vacating the death sentence. Also, the court expressly noted the improper cross-examination was not fundamental error regarding guilt, but may have affected the sentence. *See id.*

as discussed above, there is no merit to the confrontation claim, appellate counsel

was not ineffective. [6]

We AFFIRM the district court's denial of habeas corpus relief.

_____

[6]    As a last thought, petitioner suggests that his twenty-year incarceration alone may be violative of the Eighth Amendment. This is the first time petitioner has made this argument, and this court need not address it. *See Oyler*, 23 F.3d at 299 n.8. Even if we were to address the claim, we conclude it is without merit because delays occurred in part due to petitioner's failure to exhaust state court remedies. *Cf. Stafford v. Ward*, 59 F.3d 1025, 1028 (10th Cir. 1995) (concluding lengthy delays were caused largely by petitioner who sought repeated stays to pursue legal remedies; recognizing Supreme Court has not endorsed this legal theory). *See generally Knight v. Florida*, 120 S. Ct. 459, 459 (1999) (denying certiorari on similar issue; opinion of Stevens, J., pointing out denial is not ruling on merits).