IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-31226
_____

KEITH BRAZLEY

                                    Petitioner - Appellant

        v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY

                                    Respondent - Appellee

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 00-CV-864

_____
April 16, 2002
Before KING, Chief Judge, and HIGGINBOTHAM and DAVIS, Circuit
Judges.

PER CURIAM:[*]

    A jury convicted Petitioner - Appellant Keith Brazley of

second degree murder in Louisiana state court.  After Brazley

unsuccessfully appealed his conviction, a state court denied him

habeas corpus relief.  A federal district court denied Brazley

federal habeas relief under 28 U.S.C. § 2254.  Brazley obtained a

_____

        [*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

certificate of appealability from this court and now appeals the district court's denial of federal habeas corpus relief. For the following reasons, we AFFIRM the district court's judgment denying relief.

## I. Factual and Procedural History

On September 3, 1995, at approximately 3:30 a.m., Keith Brazley ("Brazley") entered the home of his ex-girlfriend, Michelle Guy, and killed Anthony Brazley ("Anthony"), Michelle's boyfriend at that time.[1] The principal events leading up to the crime include the following. On the evening of September 2, 1995, Anthony and Michelle attended a birthday party with Michelle's uncle, Gregory Guy ("Gregory"), and his wife Anita. After the party, which ended around 2:00 or 2:30 a.m. on September 3, Anthony, Michelle, Gregory, and Anita returned to the home that Michelle and the Guys shared.[2] Gregory and Anita returned in their car, while Anthony and Michelle returned in Anthony's van. Because Michelle was afraid that seeing Anthony's van in front of the Guys' home would anger Brazley, she instructed Anthony to park his van on the side of the house. Michelle and Anthony then entered Michelle's apartment to retire for the evening.

---

[1] The defendant, Keith Brazley, and the victim, Anthony Brazley, are unrelated to each other.

[2] Gregory and Anita resided on the ground floor of the two-story home, and Michelle and her three children lived upstairs in a separate apartment.

2

At approximately 3:00 a.m., Michelle answered a knock at her front door.  Brazley knocked her down and then entered the apartment.  Michelle fled the apartment.  Brazley then allegedly armed himself with a kitchen knife and attacked Anthony, stabbing Anthony in the neck.  Anthony's stab wound resulted in excessive bleeding that eventually caused his death.

The sound of the confrontation woke Gregory, Anita, and Michelle's three children.  Gregory ran to Michelle's apartment and found the apartment empty except for the three children.  Gregory then went out into the front yard to investigate a trail of blood that originated in Michelle's apartment.  Gregory observed Brazley pull up to the front of the house in Brazley's car.  Brazley then allegedly commented to Gregory, "I've been waiting to do this."  Brazley drove away from the front of the house in his vehicle.  Gregory continued following the trail of blood which led him around the corner of the house, where he discovered Brazley attempting to load Anthony's body into the trunk of Brazley's car.  After a warning from Gregory, Brazley fled the scene, leaving the body on the street.  The police arrived at Michelle's apartment soon thereafter.  Based on witness interviews and information received during their investigation of the crime scene, the police arrested Brazley. On October 26, 1995, Brazley was charged with the first degree murder of Anthony.

Brazley pled not guilty and requested a jury trial. During discovery, defense counsel asked the State to reveal all of Brazley's statements that it intended to introduce at trial. The State responded that all res gestae statements would be used.[3] During the prosecutor's opening statement at trial, he referred to the statement allegedly made by Brazley to Gregory suggesting that Brazley had been "waiting to do this." Defense counsel moved for a mistrial or, in the alternative, for exclusion of the statement during the trial on the ground that the statement had not been revealed to defense counsel during discovery. The State argued that the statement was a res gestae statement and was thus properly revealed to defense counsel during discovery, but the trial court rejected that argument. The trial court then excluded the statement from evidence and offered to instruct the jury that the statement was not evidence.

At the close of evidence, the trial court asked defense counsel if he wanted any additional jury instructions, and defense counsel did not offer additional instructions. As a result, the trial court never instructed the jury that Brazley's inculpatory statement to Gregory was not evidence to be considered in reaching a verdict. The jury found Brazley guilty

---

[3] "Res gestae" refers to evidence of words or actions which form an integral part of the charged offense. Pratt v. Cain, 142 F.3d 226, 232 (5th Cir. 1998).

4

of second degree murder on May 12, 1996.  The trial court sentenced Brazley to life imprisonment without parole.

Because of the prosecutor's improper mention of Brazley's alleged inculpatory statement during the prosecutor's opening statement, the Louisiana Fourth Circuit Court of Appeal reversed Brazley's conviction and remanded for a new trial.  State v. Brazley, 96-KA-1657 (La. App. 4 Cir. 11/5/97), 703 So. 2d 87. The Supreme Court of Louisiana, however, reversed the appellate court's ruling and reinstated Brazley's conviction.  State v. Brazley, 97-K-2987 (La. 9/25/98), 721 So. 2d 841.  Brazley sought state habeas corpus relief, but the Louisiana Supreme Court denied such relief without explanation on October 1, 1999.  State v. Brazley, 99-KH-1332 (La. 10/1/99), 747 So. 2d 1140.

On March 27, 2000, Brazley filed a petition for federal habeas corpus relief in district court asserting, inter alia, violations of his Fourteenth Amendment right to due process of law and his Sixth Amendment right to present a defense. Brazley's due process claim is essentially based on the prosecutor's mention of Brazley's inculpatory statement during the prosecutor's opening statement.  As a result of the trial court's decision to sanction the prosecutor's discovery abuse by precluding the admission of Brazley's inculpatory statement at trial, the statement was never introduced at trial.  Brazley asserts that the prosecutor's improper opening statement, coupled with the discovery abuse and unremedied by a curative

5

instruction, amounts to particularly damaging prosecutorial misconduct in violation of his due process rights.

Brazley's Sixth Amendment claim is essentially based on the same facts, i.e., the State's failure to provide during discovery Brazley's alleged inculpatory statement coupled with the prosecutor's mention of that statement during his opening statement. Brazley asserts that these actions violated his Sixth Amendment right to present a defense. Brazley argues that his counsel's theory of defense, i.e., that the killing may have amounted to manslaughter but lacked the specific intent required for a murder conviction, would have been different had his counsel known that Brazley allegedly made the inculpatory statement and that the statement would be brought to the jury's attention.

The district court denied federal habeas relief and denied Brazley's request for a certificate of appealability (a "COA"). Brazley timely filed a motion for a COA and a notice of appeal in this court. This court granted Brazley's request for a COA on the issue whether Brazley's constitutional rights were violated because the prosecutor referred to the undisclosed inculpatory statement during his opening statement and because the trial court failed to remedy the error by granting a mistrial or by issuing a curative jury instruction.

6

## II. Analysis

Since Brazley filed his federal habeas application in the district court after April 24, 1996, his claims are governed by the standards established by the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C.A. § 2254 (Supp. 2001). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997). Under the AEDPA, a petitioner must exhaust his state court remedies before applying for federal habeas relief. 28 U.S.C. § 2254(b); see also Rose v. Lundy, 455 U.S. 509, 516 (1982). Generally, the exhaustion requirement is satisfied only when the specific constitutional grounds urged in a federal habeas petition were presented to the state's highest court in a procedurally proper manner. Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999).

The State argued to the federal district court that Brazley failed to exhaust his due process and Sixth Amendment claims prior to applying for federal relief. Liberally construing Brazley's pro se state habeas petition, the district court disagreed and concluded that Brazley properly exhausted his state court remedies. Although the State does not assert its exhaustion argument on appeal, the argument was not waived. 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives

7

the requirement."). Thus, this court may raise the exhaustion issue <u>sua</u> <u>sponte</u>. <u>Tigner v. Cockrell</u>, 264 F.3d 521, 526 n.3 (5th Cir. 2001). We agree with the district court that Brazley properly exhausted his state court remedies with respect to his due process and Sixth Amendment claims.

In this circuit, state and federal habeas petitions filed by pro se petitioners "are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers." <u>Bledsue v. Johnson</u>, 188 F.3d 250, 255 (5th Cir. 1999). Thus, Brazley's pro se application for state habeas relief is entitled to "a broad interpretation." <u>Id.</u> Brazley's state habeas petition alleges the denial of "a proper, and fair deliberation by the jury" and the violation of his "right to a <u>fair trial</u>." Liberally construed, these statements assert a violation of Brazley's Fourteenth Amendment right to due process of law. Furthermore, Brazley's state habeas petition asserts that the prosecutor's mention of Brazley's alleged inculpatory statement undermined Brazley's manslaughter defense. The petition states:

> The inadmissible statement became the state's one and only ally to show intent, but an ally so overpowering, that nothing else [was] needed. Every single piece of evidence [was] received by the jury colored by this statement being put before them. Absent this inadmissible statement, the state's case wallowed in a sea of speculation.

Liberally construed, these statements assert a violation of Brazley's Sixth Amendment right to present a defense.  Lastly, Brazley's state habeas petition concludes with the statement that his claims assert "violations of well established constitutional rights."  After granting Brazley's state habeas petition the broad interpretation to which it is entitled, we conclude that the petition properly presented his Fourteenth and Sixth Amendment claims to the Louisiana Supreme Court.  Thus, Brazley exhausted his state court remedies with respect to these constitutional claims.

Under the AEDPA, a federal district court may not grant an application for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).[4]  The phrase "clearly established Federal law" "refers to the holdings,

---

[4]    Because Brazley's due process and Sixth Amendment claims involve mixed questions of law and fact, § 2254(d)(1) applies instead of § 2254(d)(2).  See Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001) (stating that mixed questions of law and fact are reviewed under § 2254(d)(1) rather than under § 2254(d)(2)); see also United States v. Emuegbunam, 268 F.3d 377, 403-04 (6th Cir. 2001) (stating that prosecutorial misconduct presents a mixed question of law and fact); Jones v. Gibson, 206 F.3d 946, 958 (10th Cir. 2000) (same); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997) (same); United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989) (same).

9

as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). The parties do not argue, and the record from Brazley's state habeas proceedings does not suggest, that the Louisiana Supreme Court's denial of habeas relief was not an adjudication on the merits of Brazley's constitutional claims. Thus, the AEDPA affords Brazley relief only if he establishes that the state habeas court's adjudication was either "contrary to" or an "unreasonable application of" federal law. DiLosa v. Cain, 279 F.3d 259, 262 (5th Cir. 2002).

A state court decision is "contrary to" federal law where "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or where "the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" federal law if "the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. Thus, "we have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect." Neal v. Puckett, No. 99-60511, 2002 WL 407382, at *4 (5th Cir. March 15, 2002) (en banc).

   *i. Brazley's Due Process Claim*

10

Brazley asserts that the prosecutor's improper opening statement, along with the trial court's subsequent failure to issue a curative jury instruction, violated his due process rights.[5] Thus, Brazley argues that the Louisiana Supreme Court's denial of habeas relief on his due process claim was "contrary to" or an "unreasonable application of" federal law. In analyzing whether the prosecutor's statement violated Brazley's due process rights, "[t]he relevant question is whether the [statement] so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal citation and quotation omitted). In order to rise to the level of a due process violation, the prosecutor's statement must render the trial "fundamentally unfair." Id. at 183.

Brazley argues that the prosecutor's reference to Brazley's alleged statement to Gregory that Brazley had been "waiting" to kill Anthony was damaging because the statement suggests that the killing was premeditated murder rather than manslaughter.[6]

---

[5] The prosecutor's mention of Brazley's inculpatory statement was improper because the statement was not supported by evidence presented during trial. See supra Part I.

[6] The only theory of manslaughter relied on by Brazley at trial was the "heat of passion" theory. Under this theory, a homicide which would otherwise be murder can be downgraded to manslaughter if the homicide was "committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." LA. REV. STAT. ANN. § 14:31 (West 2002).

11

Brazley thus asserts that the prosecutor's error destroyed his manslaughter defense and rendered his trial fundamentally unfair. The State counters that, because the trial court excluded Brazley's alleged statement to Gregory from evidence, the prosecutor's error actually helped Brazley's defense. The State asserts that Brazley's manslaughter defense was unsuccessful because of the evidence introduced at trial, rather than the prosecutor's improper opening statement.

The State introduced substantial evidence at trial supporting a conviction for murder rather than manslaughter. First, the State established that, unlike in many manslaughter cases, Brazley was not provoked by discovering Anthony and Michelle in bed together. Rather, Brazley knocked down Michelle before entering her apartment to search for Anthony. Second, the State's evidence showed that Brazley had the presence of mind to obtain a weapon from the kitchen before looking for Anthony in the bedroom. Brazley did not testify and did not present any defense witnesses. His entire defense consisted of the opening statement of defense counsel, which appears to argue for a manslaughter conviction (as distinguished from a first degree murder conviction), cross-examination of the State's witnesses and the closing statement of his counsel (which was not transcribed). To the extent that the jury focused on the reference during the prosecutor's opening statement to Brazley's alleged statement, his manslaughter defense was clearly

undermined.  But the evidence presented at trial shows little, if any, real support for a manslaughter defense.  On this record, we cannot say that the Louisiana Supreme Court's determination that Brazley's trial was not rendered fundamentally unfair by the prosecutor's improper opening statement, along with the trial court's subsequent failure to issue a curative jury instruction, was "contrary to" or an "unreasonable application of" federal law.

### ii.  Brazley's Sixth Amendment Claim

In addition to his due process claim, Brazley asserts that the State's discovery violation coupled with the prosecutor's improper opening statement violated his Sixth Amendment right to present a complete defense.  Brazley thus argues that the Louisiana Supreme Court's denial of state habeas relief on his Sixth Amendment claim was "contrary to" or an "unreasonable application of" federal law.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."  United States v. Scheffer, 523 U.S. 303, 329 n.16 (1998) (internal citations and quotations omitted).  At first glance, this sweeping language appears to reach Brazley's Sixth Amendment claim.  However, Brazley does not point

13

to any authority, and we have been unable to discover any, holding that a prosecutor's improper reference to an undisclosed inculpatory statement violated the defendant's Sixth Amendment right to present a defense. Virtually all of the Supreme Court's cases discussing the Sixth Amendment right to present a defense consider violations of either the Confrontation Clause due to the presentation of State evidence without the opportunity for defense cross-examination[7] or violations of the Compulsory Process Clause because the defendant was prevented from putting on witnesses or from introducing evidence.[8] In light of the dearth of Supreme Court cases addressing a similar Sixth

---

[7] See, e.g., United States v. Owens, 484 U.S. 554, 557-61 (1988) (analyzing whether the introduction of testimony concerning an out-of-court identification violated the defendant's rights under the Confrontation Clause when the identifying witness is unable, because of memory loss, to explain the basis for the identification on cross-examination); Davis v. Alaska, 415 U.S. 308, 315-20 (1974) (analyzing whether the refusal to allow the defendant to cross-examine a key prosecution witness violated the defendant's rights under the Confrontation Clause).

[8] See, e.g., Scheffer, 523 U.S. at 308-12 (analyzing whether an evidentiary rule requiring the exclusion of polygraph evidence, which was offered by a defendant to rebut an attack on his credibility, violated the defendant's Sixth Amendment right to present a defense); Michigan v. Lucas, 500 U.S. 145, 149-53 (1991) (analyzing whether the exclusion of evidence of the defendant's own past sexual conduct with the victim, as a sanction for the defendant's failure to comply with the notice-and-hearing requirements of the state's rape-shield statute, violated the defendant's Sixth Amendment right to present a defense); Taylor v. Illinios, 484 U.S. 400, 407-18 (1988) (analyzing whether the imposition of a discovery sanction that entirely excluded the testimony of a material defense witness violated the defendant's Sixth Amendment right to present a defense).

14

Amendment claim, we cannot say that the Louisiana Supreme Court's denial of Brazley's state habeas claim was "contrary to" or "an unreasonable application of" federal law.

### III.  Conclusion

For the foregoing reasons, we conclude that the Louisiana Supreme Court's denial of habeas relief on Brazley's due process and Sixth Amendment claims was not "contrary to" or an "unreasonable application of" federal law.  Accordingly, we AFFIRM the district court's judgment denying federal habeas relief.